Good morning, your honors. To please the court, Robert Friedel for the appellant Sol Deleon. Your honors, this appeal at this juncture presents really a very simple case. Many of the issues have already been eliminated. And what this really is coming down to now is an issue of whether there is a genuine issue of material fact as to whether Mr. Deleon had late meal breaks on a number of occasions, up to 16 occasions in 2006 through January 2007. So the real issue on appeal is simply is there a genuine issue of material fact on that claim. Counsel, I was curious that notwithstanding the fact that 16 late meal breaks are at issue, there were only records dealing with four submitted. Can you fill us in on what's going on there? Yes. Mr. Deleon looked at time records and referenced them in his declaration. And those records, and I'm referring to his declaration at ER 43 through 44, those dates all correspond to dates where there were late meal periods at EUS 8 through 12, your honor. So if you take each of those dates in his declaration and look at that EUS 8 through 12, you would see, for example, that September 20, October 10, November 2, November 9, are all dates where there was a meal period taken after five hours. Now, in addition to that, there were some records that were produced by Mr. Deleon and then relied on by Time Warner to challenge four of the 16 dates. And we've addressed that in the reply brief. Well, now, let me be sure I understand what you're telling us. Are you saying that Mr. Deleon offered records with respect to all 16 dates, or we only have records with respect to four, which are the four that Time Warner put in evidence? I'm saying that he testified to 16 dates based on his recollection and review of time records, and the time records are located in the record at EUS 8 through 12. Okay. But when you say the time records, do you mean time records for all 16 or just for a random sample? In the EUS 8 through 12, you have daily time records. And based on those, you can see that he worked from one time of the day to another, and then there's a break. And those dates and times correspond exactly to the dates and times in his declaration, except there is one typo of one minute on one of them. And for how many of those breaks are we talking about, these EUS records? Pardon me? How many episodes are we talking about when you say that? Sixteen, Your Honor. And where do I find them in the ER that I've got? At EUS. What's EUS name? Excerpts Under Seal. Ah. Why under seal? I guess I did not bring the under seal. Here, I'm sorry. EUS. And so what page do I look at? 8 through 12. 8 through 12. Okay. For example, on 8, you would find September 20th. On 9, you'd find October 10 and November 2. On 10, you'd find the 7th. Could I stop you for a minute? I'm having trouble finding this. What's the label on the bottom, EUS? Yes. I don't think I was able to bring those. Go ahead. I'm sorry. Okay. So there are 12 dates in question over a six-month period that Mr. De Leon asserts that he had late meal periods. He's testified in his declaration several things. That his meal breaks were usually scheduled at or after four and a half hours. That he regularly received customer calls that lasted over an hour. That he had calls often that were 10 to 90 minutes. Significantly, that there was a call completion policy that if he was on a phone call, he was not allowed to stop a phone call in order to take a meal or rest break. Instead, he had a button he could push that would make him unavailable to whoever routes the calls at the end of the call he's on. And at what point can he push the button? Can he push the button during the call? That's my understanding. And does that then register on the record that the unavailability button was pushed during the call? Or does that register in these time records only at the conclusion of the call? I don't know if it's registered in the records at all, but it's undisputed that the method of Time Warner to provide meal breaks and rest breaks was to allow the employee to press a button that would make him unavailable so that no more calls would be routed to him. Okay, assuming for the moment that we have sufficient evidence in which he is contending that on these 16 episodes, or maybe it comes down to 12, but in any event, a number of episodes, he began the call, the call lasted so long that it goes into his meal break time. I'm somewhat sympathetic to the employer here because the employer anticipates that most of these calls aren't going to last very long. And it says, because we know that we're supposed to give you a meal break no later than five hours after the beginning of the shift, we'll insist that you do not take any calls after four and a half hours. What's the employer supposed to do? Well, there's a number of things. First off, this is a situation where I imagine that Mr. DeLeon and other people are operating, answering phones for, in his case, often 10, 11 hours or more a day. One thing the employer could do is set the meal periods earlier, so it would be impossible for the meal period to go over past the fifth hour, though they contend that it's already impossible and we disagree with that. Another thing they could do is automatically have the unavailability button pressed at the meal break time so that they could avoid the situation that's been suggested here where a scurrilous employee could purposely go over the five hours to earn a meal period premium. Well, I'm not interested in the manipulative employee. Whether it happened with respect to Mr. DeLeon, I guess, is in dispute, but I'm assuming that a good-faith employee who starts a call at four hours and 29 minutes may very well get a call that is an unusual call and that it lasts, say, 45 minutes. I understand perfectly that the employer doesn't want the phone answer at time warranted and say, oh, you know, I've almost solved your problem, but sorry, I'm gone. I'm going to hand you off to my coworker. You're going to get an unhappy customer at that point. Well, he's not allowed to do that. That's one of their policies. Well, I understand why he's not allowed to do that. So I'm trying to figure out what's the employer supposed to do here. One of your suggestions was, okay, require that the meal breaks, that you can't take a call after four hours instead of after four and a half. Anything else the employer might do? Well, according to Brinker, once the meal duty is triggered, one of the things they can do is pay the premium. And the premium is what? Pay him for an extra hour? Yes. So it's not very much. It's not very much. And considering that customer care is important and a customer who's on the phone for an hour would really hate it to be cut off. So if that had been the policy of Time Warner, at least retroactively if they now know the rule, and the rule is you can make him stay on the phone, even if they pick up the phone at four hours and 29 minutes. The call is still going on at five hours. You can make him stay on the phone. And the cost that the employer then incurs for that day that they made him stay on the phone is that he gets paid his hourly rate for an extra hour for that day. Yes. That's the statutory scheme? That's the statutory scheme. Okay. And I think it's a scheme that, with the automation of the kinds of systems we have here, works very well at the time of these calls. It's like putting into the hands of the employee the ability to get a pay raise. I'm sorry, Your Honor. It's like putting into the hands of an employee the ability to get a pay raise. Well, that's not very good employment practice. Well, they could do that, but another thing they could do is automatically make the employee not available. They can push the button. They could push the button at four and a half hours. Yeah, but that may not be very much to the liking of employees either. It's not very desirable to have a break too early when you've got a lot of hours still left in the day. I don't think you can tell the employer when the break should come, as long as the employer is complying with the law. And you can't put into the hands of the employee the ability to get a raise just by timing his calls. Well, the employee is entitled to the meal break within the first five hours, and the laws expressed in Brinker requires the employer to provide the meal break and provide the meal break. What do we do with a hypothetical employee that Judge Hellerstein and I, frankly, are worried about? I understand from Justice Werdegar's opinion in Brinker says the employee should not be rewarded for manipulating things so that he goes over. What control as a practical matter might the employer have against a manipulating employee who, well, you know, this call is going to be in the ordinary course of events. The call begun at 4 minutes and 29 would end at 4 minutes and 45. But the employee just keeps talking, solves the problem slowly. I mean, how can the employer protect itself against this sort of slow-talking employee at 4 hours and 50 minutes so that we get an extra 10 minutes and then get an extra hour a piece of the day? Well, I think that if they discover that there are employees who are purposely talking slow. Or solving the problem slowly. Not solving the problem, then that is a different issue, and such an employee should be disciplined or terminated. But that is not the case. If someone has a pattern of doing that, or if an employee has a pattern of purposely not starting his meal breaks within the first 5 hours, then an employer could take such action. Or an employer, as I suggested, could use the technological abilities at its disposal to automatically cause an employee to become unavailable at the end of the first call that happens to be within that last half hour. That would solve the problem, too. Is it permitted under California law for the employer to sign an agreement with the employee that says, in circumstances such as are described here or alleged by your client, you can be required to work into your meal break? Can they enter into a signed agreement that forfeits the protection of the law? Yes, Your Honor. Many employers do that. It's called a waiver, and it operates where the meal break isn't going to be within the first 5 hours, but the entire workday is going to be no longer than 6. I went through each of the dates referenced in Mr. de Leon's declaration on EUS 8 through 12, and none of those dates, as a matter of fact, were dates where the workday was only 6 hours. They were 7 1⁄2 or so through 11 1⁄4 hours. So none of the waiver issues would apply in this specific case. But you're absolutely correct. There is a way to do that. And the way some employers do it is by having an employee, when they join the company, sign a waiver, and that happens more often in the restaurant industry, but the employee may revoke the waiver at any time, and that's how that tends to operate. But, of course, there's none in this case. None in this particular case. Scalia. Counsel, I'm aware that you're raising the question of whether there's genuine issue of material fact, and I'm looking at Judge Guilford's summary judgment. Where precisely do you argue that he made the mistake? Where did he go wrong? I suppose it would be somewhere between pages 6 and 10 of his order. Well, what the judge did wrong was, first, he assumed that there was no such thing as a late meal period claim, but then he completed the analysis anyway. And that, I think, was a question in those days whether there could even be a late meal period claim. No, but you're saying that there are genuine issues of material fact, which, in effect, Judge Guilford preempted by his summary judgment. I want to pin it down precisely. Where did he go wrong in his judgment? Where he went wrong was he determined, based on statistical evidence presented by the defendant as to average phone call lengths, that Mr. de Leon's late meal break claims would fail. And would you like me to try and locate a page? But that was his analysis, is that the average phone call was between 6 and 7 minutes. Right. And then he had a hypothetical that if an employee has a phone, has a meal break scheduled at 4 1⁄2 hours, the next, and presses the button, they will have a meal break start within a short period of time. And even if Mr. de Leon's phone calls were somewhat longer, based upon these averages and you can see from the declaration of Mr. Gonzalez at SER 359 paragraph 4 and 360 that all the Respondent has presented is average time calls. So I assume in answer to my question, you suggest that he's probably made the mistake somewhere between pages 8 and 10 of the summary judgment in his analysis. I think the difference is the finding by the district judge that there was no showing of, in effect, force. On the bottom of page 8, citing White vs. Starbucks, a district court concluded that California law would require only that an employer offered meal breaks without forcing employers actively to ensure that workers are taking these breaks. In short, the employee must show that he was forced to forego his meal breaks as opposed to merely showing that he did not take them, regardless of the reason. Coupled with the provision by the employer that there should be two breaks plus a lunch break during the course of the day and that supervisors must actively try to get them, the inference that is drawn by the district judge is that there was no showing of a violation of California law. And I take that at the bottom of ER 9. Is that error? Yes, it is, Your Honor. In fact, the district judge, the issue is whether a meal break was provided. And at that time, the district judge even had to resort to the Merriam-Webster's Collegiate Dictionary to determine what was meant by provide, and I think he said it means offer. But now, after the Brinker decision, we have a lot more information about what provide means. Provide means that you relieve an employee of all duty, for one thing, and Mr. DeLeon on occasions where his meal periods were late was not relieved. Well, let me put it this way. The way that the system works is not that the employer says you're relieved of duty. They had a schedule, and then it's up to an employee to press the button. So that's one thing, and I'm aware of no cases really discussing. How can the employer, following the analysis of Brinker, ever prove that it was the employee that was forced? The employer is saying, I did nothing to enforce it. I set up supervisors, in fact, to enforce the breaks. How can I say that an employee who chooses to keep calls going or to take calls at the last minute isn't manipulating the law, manipulating the rules? This seems to me it's an illusory burden of proof on the employer in this kind of a situation. Well, they must be able to monitor what people do and, in fact, exhibit E to... But there's a tension. In any kind of a service business, there's always a tension of quality and time. I remember when I worked in a post office and looking for making as much money as I could, it was uncanny how many of us came for the last bag five minutes before closing time so we could earn overtime. We were not shirking. We were not manipulating. It just worked out that we got the overtime. Well, in this case, the employees were very closely monitored. I think it's the declaration... Counsel, please answer the question. You're about five minutes over time, so... How can the employer enforce that? The employer can enforce that by, number one, monitoring employees to make sure that if there are any bad apples, say, they find them out. Number two, by using the technology to make sure that when a phone call does end, the employee has to go on a break because no more calls come in. That's two ways that come to mind, not being an employer myself. Provides a button. You can press the button, no more calls. If Mr. De Leon can press the button, why can't the employer? All right. Thank you very much, Counsel. Your time has expired for your side. We will now hear from the other side. Thank you very much. Thank you, Your Honors. Thank you, Your Honors. May it please the Court. Joseph Osmer for the Appellee Time Warner New York Cable. I'd like to start off by talking about Brinker because that's the central case here. Opposing Counsel led off his argument by saying that there's a genuine issue of fact over whether he had late breaks. Respectfully, there can't be a genuine issue of fact over just whether he had late breaks because the Brinker standard isn't, there's no liability if a break is simply late. What Brinker clarified was that the employer's responsibility is to make timely breaks available, to make breaks available, and the only issue here is whether they were before five hours of work. As I read Brinker, Justice Werdegar writes that the employer has to make timely breaks available and cannot impede or discourage, those are the words from Brinker, the employee from taking them in a timely fashion. Yes, Your Honor. And his evidence is, if believed, is that the system that Time Warner has set up impedes or discourages the employees from taking the timely breaks because they're required to take calls up to hour four and a half, and they're not allowed to terminate calls until the business of the call is finished, which means that there will be, according to Mr. de Leon, some calls that last longer than half an hour and that there will be occasionally, and for him, over a year and a half period, at least according to him, there were 16 occasions on which this happened. And we understand that hypothetical, Your Honor, but don't. Is that a fair statement of what he says happened and provided documents for? It's a fair statement of what their theory is. No, no, no. I've got a different question. Is that a fair statement of what he's provided evidence for? No, Your Honor. Because, I mean, I'm looking at these timesheets. It looks as though we've got the breaks that take the meal breaks that take place on these 16 occasions after five hours. He has identified 16 occasions where the break occurred after five hours. And is the evidence disputed that the policy of Time Warner is that you're required to take calls up to hour four and a half and that you're not allowed to terminate a call prematurely? That's generally true. There was no evidence that in the case of this hypothetical of these super long calls, which would be extremely unusual, there is no time Warner person testified that if you were on a call that long, you still had to finish the call. It's beyond contemplation. I'm not interested only in Time Warner. I'm interested in his testimony, too. That's what he claims, Your Honor. But the ---- That's his evidence. That's his. It was a conclusory statement he made in his declaration. He didn't provide any evidence. Well, it's a statement. You can call it a conclusory if you like. Yes, Your Honor. But my point is, when you look at the 16 occasions where there was a late meal break, again, the standard, the late meal break alone isn't enough. He has to show that we didn't provide the opportunity for a timely break. And that you did not discourage or impede. Correct, Your Honor. Discouraging or impeding would be not providing the opportunity. He hasn't shown for any one of those particular occasions. Well, if it's true that he's required to pick up a call at any time before hour 4 1⁄2, and if it's true that you have a policy that a call is not supposed to be terminated prematurely, and if it's true that some calls last longer than half an hour, where's the flaw in his saying, you know, on these 16 occasions, I wasn't provided a meal break within the meeting of Brinker? There are several flaws with that, Your Honor. One of them is that I don't think Brinker has to be read that broadly. Brinker focuses on the employer's policies and what the employer is doing to provide a meal break. And that's what Judge Guilford did here. But I would say as an initial matter, one important fact is this is different from all the cases that they've cited in their briefs where you have employers discouraging meal breaks, training employees not to take meal breaks. This is an employer that does not shirk its meal break obligations. It's undisputed that this employer, for example, provided an hour and not 30 minutes. Well, I have to say I'm sympathetic with the employer here because, as you can see from my other questions, I mean, what's the employer supposed to do?  And that's what I'm getting to. But I have to say that I see evidence in front of me in which there was a discouraging to use the Brinker term of taking meal breaks that result in 16 or maybe 12 episodes over a fairly sustained period. I don't see Time Warner as having been a really bad actor here. It might, if the evidence is true, have violated the statute on 12 or 16 occasions. But it looks to me like you've got a good-faith employer. We do, Your Honor. And I'd like to just focus on some of the things that we did to make the breaks available. These are undisputed facts that Judge Guilford found. And then I want to talk about how he's talking he's just identified these 16 breaks and made this sweeping statement. They were on a call. They completely ignored the evidence, not only of what we did to make them available, but of how he was not following those procedures. And I'd like to talk about that for a minute. As Judge Guilford noted, it's undisputed that the latest a meal break would be scheduled was four and a half hours into the shift. So the Time Warner is building in a 30-minute buffer. As opposing counsel admitted, the average length of a call is less than 7 minutes. It's 6 minutes and 27 seconds. So you have a 30-minute buffer and an expectation that a call is going to take about 7 minutes. There's enough – there's more than enough time for four calls between that 4-hour and 30-point and the 5-hour. Enough time for four average calls. Yes, Your Honor. And, of course, if you have an extremely complex call, there's also evidence in the record that those can be transferred to someone else who can handle them if an employee can't handle the call. That came out in the – Can't handle the call because it's going to take too long or can't handle it because I can't figure out the answer? The latter, Your Honor. The latter. So that doesn't help you. Yes, it does, because it tends to be the call that you can't handle that tends to be long. I would agree with that, Your Honor. But we also have undisputed facts that, as they admit, that when this employee is approaching their break, when you get to either 7 minutes before your break, you can take your break at that time and be within scheduled adherence. We monitor and incentivize employees to take their breaks on time because it goes into the performance evaluation. It also goes into the performance evaluation of the supervisor. If the employees aren't taking their breaks when they're scheduled for, it hurts the supervisor. In any event, in order to facilitate the policy, and not just the policy, but the rule that they take that break as soon as a call ends, if they're on the phone when their break comes up, all they have to do is click on the unavailable icon during the call. To answer one of the questions that was brought out earlier, when they click that unavailable icon, that makes sure no phone calls can come in, but it doesn't start the break. The break time doesn't start running until the phone has a call. If a policy of staying on a call until you finish it, which is, of course, a good policy, causes the employee to lose a break on a timely basis, is that a policy that forces an employee to lose the break within the meeting of Brinker? It's a policy that if he was, that could be so, Your Honor. If there was evidence of a call, of a particular call that lasted that long, and it's their burden to prove, we didn't provide the opportunity. He's come out with confident evidence that says, on these 16 occasions, I had to stay on a call and lost my break. So just by the policy of continuing with a call that forces the employee to lose the break, doesn't he state a sufficient prima facie case to avoid summary judgment? No, Your Honor. Again, I don't think Brinker can be read that broadly. Brinker focuses on the policies of the employer, the efforts to provide timely meal breaks, because, as the panel has asked, what is an employer to do? Let's say that Time Warner has done a terrific job, but the nature of the business, some instances will occur where some employees at some times will lose their break, and the question is, should they be compensated for it according to law? And doesn't an employee satisfy his burden for summary judgment purposes by saying, on these X occasions, I could not take my break? No, Your Honor. Because what he has done on those occasions, what that does is it puts an employer would never get summary judgment, because any employee could identify, merely identify the late breaks and come up with a conclusive assertion that I was on the phone. Now, in this particular case, we would be in the position six and seven years later of putting the burden on the employer to go back in and prove that that wasn't the case. So the argument on your half is that since average calls last less than seven minutes, you don't have in the record how long the span is or what's the median as well as the average. But since most calls last less than seven minutes, by giving employees break time, we satisfy the law. And on the few occasions where something happens and you have to stick with a customer, that's the nature of the job. You can't complain. That because the policies are designed and effective in providing meal breaks, we do find that to be the case. But even if it wasn't, our argument is also that he has to prove. That would be the addition to law that you would like us to make, namely that if an employee has a decent policy of giving breaks and there's no reasonable expectation that most calls will endanger those breaks, the employer satisfies his burden, even though there may be instances where in particular calls, at particular times with a particular employee, the employee loses his break. We do think that that should be the law and that that is where what Brinker does. It puts the focus on those policies. But we don't think you have to go far. That's the statement of law that you would like us to draw. We don't – I don't think – I would like that, but I don't think the Court has to go that far. And here's why. On a summary judgment. Yes, Your Honor. I don't think you have to go that far. Because what the evidence also shows is these mechanisms that we put in place to ensure timely breaks, the plaintiff wasn't following. In what way? In several ways, Your Honor. For instance, the key feature of hitting the break so no further call comes in. He testified, and it's in the record at ER 109, that he wasn't doing that, that he wasn't doing that. And then he complained. And I think that's the key point in his declaration, was that, I would continue to get phone calls that would take me over my break. Well, that's because he's not following the policy. And additionally, it's also undisputed that in addition to the – So it's under his control to limit the calls? Yes, Your Honor. And it was also, even if he forgot to – On this competent testimony that he did not take advantage of the policies offered by the employer – He admitted it. – to get his breaks on time. Can you point me where in the record he admits that? It's at ER 109, Your Honor. He's – That's very good that you anticipated that question. He maybe anticipated that question. Hang on a second. I'm looking at the – Yes, sir. So where – I'm on 109. So what am I supposed to look at? I guess line 23. ER 109, it would be line 2 to – well, to get down to it, 2 to 21. At the bottom he said – when I'm asking him about this break code, he said, it's not what I saw, it's not what I did. Okay. Hang on. I'm just going to take me a second. I was talking about it earlier. Were you aware you could hit the break button in the middle of a call, get in front of the calls, and was I aware I could do that? Yes. No. Okay. So it would surprise – that would surprise you if other employees testified that it was, in fact, a procedure. You were on call during breaks. Did they hit the break code? And would you surprise me? I don't know how to answer, but, yeah, that's not what I saw. It's not what I did. So, okay. You already testified there were occasions where you're late for taking a break when you need to take a break. That's – You already covered what I was referring to, Your Honor. It's not what I saw and not what I did. I would also like to point out – Okay. But that doesn't quite say that he picked up calls after 4 hours and 30 minutes. That's in his declaration. He stated that he would sometimes continue to receive calls. I believe it may also actually be in the complaint. And I'm sorry, Your Honor, I don't know the specific record. He says in line – on the previous page, 108, line 23, the system is so automated as soon as one call is hung up, another one will come flying in, and I'm obligated to take that one as well. And I would like to address that. That's the other point about not taking advantage of the employer policies. That's not – it's undisputed that even – that the employer will be able to – the employee has provided – the employer has provided a system where the employee can control the next call. That is in the declarations of Jose Quintanilla and Hugo Gonzalez. And that – those are in the record, I believe, at SCR, supplemental excerpts of the record, 353 to 361 are their declarations. But the other point I want to make out, which is also in the – those declarations, is that even if an employee forgets to hit the break code while they're on the phone, there's an automatic four- to five-second delay before another call can be routed. It's a failsafe to give that employee a chance to just click that unavailable icon if he forgot to do it while he was on the phone. I understand the problem your client is facing here, that we're not merely talking about Mr. DeLeon. We're talking about a class action. If this were just Mr. DeLeon and we're not looking at a possible class action and certification, I would have actually very little hesitation about, as a practical matter, about sending this back for trial because even what you pointed me to doesn't tell me that all 16 of those breaks were breaks in which he picked up the phone after 4 hours and 30 minutes, and it was his fault for that having happened. But, Your Honor – On the other hand, you're subjected to enormous liability, or at least possibility of liability and settlement – pressure to settle if this goes back saying, but it strikes me as possible, given the high variability and fact-specific nature of what this person did, you may be able to survive a class certification motion because the evidence is so particular to the individual. But, Your Honor, I'd like to address what Your Honor said about the – with respect to the 16 instances. Your Honor's comment flips the burden of proof to us to disprove on each of those 16 instances. For us, six years, seven years later, to go in and prove that each time he had the opportunity. That can't be the law. That is tantamount. What that does – Brinker said employers aren't required to insure. Much of his argument was that we are required to insure. We have to put this code in or that code in, and requiring employers to go back in six, seven years later after the fact and for every particular break that was taken late to prove that he actually had the opportunity. And in the absence of a class action, this is totally trivial. You pay him 16 hours of work, and he goes home. I wouldn't call it totally trivial because we'd still be in litigation, and we'd still – Well, no, you wouldn't be in litigation. You'd pay the 16 hours of work, and he'd go home. Everybody – he'd make no money. You'd quit billing, and everybody would be happy. But what it would do as a practical – what it would do as a practical matter, Your Honor, is, as Judge Hellerstein stated, it would give employees a chance to be the boss of their own race, and it would – Well, maybe that's true. We can never go back and disprove it. It is his burden to show on the particular occasion, here was why my break was late, on this occasion, on this particular occasion, because I couldn't get off the phone. And the employee is the one in the position to do that. If you look at this contemporaneously, when he misses a break, there are many, many reasons for missed breaks. I'm not hungry. I want to take lunch with my friend who's got a later scheduled break. I have an errand to run. There are many reasons for that. And if we have to go in – at the time it happens, the employee is the one that knows the reason. If the employer kept him on the phone, he can easily document that with an email. I was on the phone, whatever – or put it to another industry. Whatever the employer did, the employee is in the best position to document that and have the evidence to prove six years later that a break was provided. I know you're over time like your opposing counsel was. I'm still a little confused about what is the state of the record with respect to the records of these 16 calls. Did I misunderstand that there are four sets of actual records of the 16, and then for the remaining 12 they're simply the assertion or the declaration by De Leon? Is that correct? It's somewhat of a misunderstanding. What he's done, Your Honor, is take the Kronos records, the timekeeping records. Okay. And he has just shown on those records over the entire course of his employment with Time Warner New York Cable 16 times where he took his lunch break after five hours. He's shown those 16 occasions. The four – what the other records are, those are called call activity reports. Those are phone records. They're not time records. Those are records that Time Warner Cable doesn't maintain anymore, hasn't maintained for years. They didn't maintain those even before this action started. But before he was terminated from Time Warner Cable, he printed out a bunch of documents, schedules, three or four months of those records, and then he produced them in the litigation. What we did was we took the days for the – we compared the 16 occasions in the Kronos records where he had identified late breaks, and we said, okay, what if those days are covered by the call activity records that he produced to us? And for every single occasion covered by the records, which was four occasions, but for every single occasion covered by the records, those records showed that he was, between the four-hour and 30-minute point of his shift and five hours, he was off the phone and therefore not only could have taken his break, but by policy was required to take his break. And our point is the law can't be that we have to somehow – we got those records by luck because he produced them, but we disproved on four occasions his conclusory assertion that every time I was late it was because I was on a long call. We also show that he's not following the procedures, which is based not only on the break code thing, but it's undisputed that supervisors are coming up to him and telling him, Saul, you're late for your break. You have to take your break. So they're not only providing him the opportunity, they're going beyond breaker. They're trying to police it. They're trying to ensure, which they're not required to do. But our point is, absent the four records that we had only because he produced them, it can't be the employer's burden to go in for every single occasion and disprove his meal break claim. That's his burden, and he has no evidence on any particular occasion, just the broad statement. With respect to the burden, the only other thing I would like to address is they spent a lot of their reply brief arguing that that burden is on us, and they have to put that burden on us in order to create a genuine issue of fact. But the law they cite for that is the concurring opinion in Brinker. It was also authored by Justice Werdegar. And all Justice Werdegar said was that you would get a presumption, the employee would get a presumption, if and only if the employer failed in its duty to keep records. It failed in its duty to record meal breaks. There's a statutory duty to record meal breaks. But it's undisputed here, we didn't fail in that duty. That's where he got the Kronos records with the 16 occasions he left. He left. Roberts. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. One further question. Sorry? Could I hear a rebuttal on this one? Because both went over. I wouldn't mind hearing a response. Well, certainly. Judge Fletcher would like to call upon Mr. Leone's counsel for some rebuttal. Yes, Your Honor. Are there any questions I could answer? No, no. But if there was something you wanted to respond to, and I don't want to detain you, but I thought since both went over, you might want a chance to respond to something. Thank you. As far as the four instances that the respondent has attempted to address, I would point out that that leaves 12 unaddressed, number one. And number two, we covered in our brief in some detail why those four instances where there was a late meal period, the records did not indicate that no meal break was provided. So we did address that issue in detail. The other thing I would add is that Justice Werdiger's concurring opinion is Werdiger. Pardon me? Justice Werdiger. Thank you, Your Honor. Justice Werdiger's. Who is writing a concurring opinion which is not the holding of the court. Yes. It's informative. I agree it is not the holding of the court. Very well. I agree it is not binding. Right. But on the other hand, this is a summary judgment posture so that the burden was on the respondent from the beginning. So by disregarding, if the Court is inclined to do so, whatever wisdom the defendant imparts in the concurring opinion, that doesn't change the burden on summary judgment. Thank you, counsel. Thank you. The case just argued will be submitted for decision.
judges: Hellerstein, O'scannlain, Fletcher